***E-FILED - 10/15/08***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | NO. CR-03-20018-RMW |
| v. | ORDER DENYING REQUEST TO INVOLUNTARILY MEDICATE DEFENDANT |
| MIGUEL PEREZ-RUBALCAVA, | |
| Defendant. | |

The United States seeks an order permitting the involuntary administration of medication to defendant Miguel Perez-Rubalcava to restore his mental capacity so he can be sentenced. The defense opposes the motion. The court has reviewed the forensic evaluations made by the Mental Health Division of the Federal Medical Center, Butner, North Carolina, the briefing of the parties, the Presentence Investigation Report prepared on October 31, 2003 by the Probation Department prior to the issue of defendant's competence arising and other matters of record. The court hereby denies the motion to involuntarily medicate the defendant.

## I. BACKGROUND

Defendant Miguel Perez-Rubalcava was found guilty on May 14, 2003 of illegal reentry following deportation in violation of 8 U.S.C. § 1326 following a bench trial. After several stipulated continuances of the sentencing date and then several more continuances to allow for mental examinations and hearings on competence, the court committed the defendant on September

29, 2004, pursuant to the stipulation of counsel, to the custody of the Attorney General for care and treatment pursuant to 18 U.S.C. § 4244(d).  The commitment constituted a provisional sentence of twenty years, the maximum authorized by law for the offense for which defendant was found guilty. *See id.*

On June 10, 2005 a report from Dr. Cochrane at FMC-Butner where defendant was committed asked the court to consider the involuntary administration of psychotropic medication to defendant in the hope of restoring him to competency for sentencing.  Neither party requested that the court take any action.  On June 15, 2006 an annual update was filed by Dr. Cochrane and other medical-personnel at FMC-Butner and the court again was asked to consider involuntary administration of antipsychotic medication.   The government took the position at that time that it would not ask the court to order the involuntary administration of medication and pointed out that defendant's failure to take drugs voluntarily "may mean lengthy confinement in an institution for the mentally ill — and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime [ ].  Accordingly, we do not believe that, at this time, there is an 'overriding justification' for subjecting Mr. Perez-Rubalcava to psychotropic medications against his will."  Govt. Csl.'s Ltr. dated August 4, 2006.  The court then declined to order involuntary medication noting that "[t]he Ninth Circuit disfavors involuntary medication orders and that [t]he government interest in getting defendant sentenced do (*sic*) not appear so important to justify involuntary administration of psychotropic medication."  Order re Provisional Sentence dated December 8, 2006.

The government has now filed a motion for the administration of antipsychotic medication to restore defendant's competency for sentencing and defendant opposes.

**ANALYSIS**

The Constitution permits the Government to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant in order to render him competent to stand trial for serious, but not violent, crimes but only in limited circumstances. *Sell v. United States*, 39 U.S. 166, 169 (2003). The standard set forth by the Supreme Court in *Sell* appears to similarly govern involuntary medications administered for the purpose of rendering a defendant competent for sentencing. *See*

*United States v. Wood*, 459 F. Supp. 2d 451, 456 (E.D. Va. 2006). The instances where a defendant can be involuntarily medicated without violating the defendant's due process rights are rare. *See United States v. Hernandez-Vasquez*, 513 F.3d 908, 913 (9th Cir. 2008). Preliminarily, the court should consider whether forced medication can be justified on grounds other than to restore the defendant to competence for trial or sentencing. *Id.* at 913-914. "[G]iven the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Washington v. Harper*, 494 U.S. 210, 227 (1990). If there are not alternative grounds justifying the administration of forced medication, *Sell* requires that the court make four findings before ordering the forced administration of medication in an attempt to render a defendant competent to stand trial. First, the court must find that important governmental interests are at stake. Second, the court must conclude that involuntary medication will significantly further those concomitant state interests. Third, the court must conclude that the involuntary medication is *necessary* to further those interests. Finally, the court must find that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition. *Hernandez-Vasquez*, 513 F.3d at 913.

In this case the court finds that the first requirement is not met. Although the government's interest in sentencing a convicted defendant can be important, that interest may be undermined if the defendant has already been in custody for a significant amount of time. *Id.* Here, the parties agree that the defendant has already been in custody for a period of time nearly as long as the time for which he would likely have been sentenced if competent. Therefore, the court does not find, given the nature of the offense and the amount of time that defendant has been in custody, that the government has an important interest in seeing defendant sentenced that justifies forcing him to be involuntarily medicated. The government has in large part obtained the deterrence and other goals of a criminal conviction and sentence.

The government relies heavily on *Wood* for its argument that the government has an important governmental interest in involuntarily medicating Perez-Rubalcava. However, in *Wood* the parties *agreed* that Wood should be forcibly medicated. Further, the question in *Wood* was

1  whether defendant should be medicated immediately so he could be sentenced (defense position) or
2  whether he should be provisionally sentenced for purposes of medicating him with a view to
3  restoring his competence and then revisiting the sentencing question (government position).  The
4  court found that the government had an important interest in trying to make sure that defendant did
5  not serve more time in custody than his sentence would be if he were competent, and, therefore, the
6  involuntary administration of medication should not be delayed.  Wood had apparently been
7  competent in the past when he took psychotrophic medication.  *Wood*, therefore, presented a
8  different situation than that presented here in three significant ways: (1) Perez-Rubalcava has
9  objected to involuntary medication; (2) Perez-Rubalcava has already been in custody for nearly the
10 length of his anticipated sentence; and (3) Wood had a history that showed that medications would
11 be successful in rendering him competent.  Under the circumstances of Perez-Rubalcava, the court
12 does not find a strong governmental interest that outweighs Perez-Rubalcava's right to refuse
13 medication.
14       The defense urges the court to either dismiss the charges against Perez-Rubalcava on the
15 basis that further confinement would violate his due process or equal protection rights or,
16 alternatively, to sentence defendant "as is."  The court finds neither proposal appropriate.  First, as
17 applied to Perez-Rubalcava to date, the provisional sentence imposed pursuant to 18 U.S.C. §
18 4244(d) has not resulted in custody time that exceeds what Rubalcava has served thus raising due
19 process or equal protection concerns.  Second, the court knows of no circumstances that allow the
20 sentencing of an incompetent defendant.
21       The government's motion to involuntarily medicate defendant is denied without     prejudice
22 to a later motion to dismiss or take other action if either party believes the circumstances then so
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

justify. The court would be willing to refer this matter to another judge to discuss resolution if the parties believe that would be helpful. Except perhaps for attendance at a settlement conference, the defendant can be returned to the appropriate facility.

Dated: October 10, 2008

_____
Ronald M. Whyte
United States District Judge